IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSHUA A. KROPP, *et al.*,
    *Plaintiffs*,

v.

RENTGROW INC., *et al.*,
    *Defendants*.

Case No. 25-cv-1076

**MEMORANDUM OPINION**

Plaintiffs Joshua Kropp and Danielle Simone have sued RentGrow, Inc. and CLEARA, LLC for alleged violations of the Fair Credit Reporting Act. Defendants have moved to dismiss Plaintiff Simone's claims. For the reasons that follow, Simone's claims will be dismissed, but RentGrow's requests for attorneys' fees will be denied.

**I.  Background[1]**

Joshua Kropp was charged with receiving stolen property, which, under Minnesota law, is a felony, for an offense that occurred in 2016. ECF 1 ¶ 35. Under Minnesota law, a conviction for a felony can be reduced to a misdemeanor if the imposition of a prison sentence is stayed, the person is placed on probation, and the person is discharged from probation without receiving a prison sentence. *Id*. ¶¶ 24–25 (citing Minn. Stat. Ann. § 609.13 Subd. 1). Kropp pled guilty and was given probation with the ability to reduce the conviction upon successful completion of his probation terms. *Id*. ¶¶ 36–37. Kropp did in fact complete his probation and was discharged

---

[1] At the pleadings stage, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

1

without a prison sentence on January 9, 2023. *Id*. ¶¶ 38–39. Plaintiffs allege that, since that time, publicly available Minnesota court records show that Kropp's conviction was having converted to a misdemeanor. *Id*. ¶ 40.

On March 31, 2023, Kropp's girlfriend, Danielle Simone, signed a lease for an apartment rental. *Id*. ¶ 41. At some point thereafter, Kropp began living with her but was not formally added to the lease. *Id*. ¶¶ 42–43. Plaintiffs allege that the original property management company for Simone's apartment knew about Kropp staying there but did not require him to be added to the lease. *Id*. ¶ 43. On or about November 1, 2023, a new company began to manage the property and insisted that Kropp apply to be added to the lease. *Id*. ¶¶ 44–45. The new property management company indicated to Plaintiffs that if Kropp passed the criminal background check, he would be added to the lease and allegedly indicated that misdemeanor convictions would not preclude Kropp from tenancy. *Id*. ¶¶ 46–48.

On or about November 16, 2023, Kropp applied to be added to Simone's lease and the property management company ordered a criminal background check from RentGrow. *Id*. ¶¶ 49–50. On November 16, 2023, RentGrow generated a criminal background report on Kropp using information furnished by CLEARA. *Id*. ¶¶ 51, 61. Plaintiffs allege, and Defendants do not dispute, that this report constitutes a "consumer report" under the Fair Credit Reporting Act ("FCRA"). *Id*. ¶ 51 (citing 15 U.S.C. § 1681a(d)); ECF No. 17 at 4–5; ECF No. 18 at 2–4. On November 17, 2023, the property management company informed Kropp that, based on the criminal history reported by RentGrow, his rental application was not approved. ECF No. 1 ¶ 52. Kropp requested a copy of the report and saw that the report indicated that he had been convicted of a felony and failed to state that the conviction was now deemed a misdemeanor. *Id*. ¶¶

2

53–55. The property management company demanded that Kropp vacate the apartment. *Id.* ¶ 65. The property management company then notified Simone that she was in violation of her lease because she had allowed Kropp to stay there and allegedly threatened to evict her. *Id.* ¶¶ 68–69. Therefore, Simone was allegedly forced to vacate her apartment. *Id.* ¶ 69.

Plaintiffs filed this case on April 1, 2025 against RentGrow and CLEARA alleging willful and negligent violations of the FCRA. ECF No. 1. RentGrow and CLEARA each filed a motion to dismiss Simone's claims; RentGrow also requested to be awarded fees and costs associated with Simone's claims. ECF Nos. 17 & 18.

## II. Standard of Review

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). At the pleadings stage, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King*, 825 F.3d at 212.

To withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative relief" by containing "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court reviewing a 12(b)(6) motion "must accept as true all of the factual

allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff," *King*, 825 F.3d at 212, bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal*, 556 U.S. at 679.

### III.  Discussion

The FCRA, among other things, "require[s] that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681e(b). The Act provides for civil liability for willful or negligent noncompliance. But the Act does not provide a private cause of action for **every** person harmed by a violation of the Act. The cause of action created by the FCRA is narrower: "Any person who willfully fails to comply with **any requirement imposed** under this subchapter **with respect to any consumer** is liable to **that consumer** in an amount equal to the sum of--any actual damages sustained by the consumer as a result of the failure." 15 U.S.C. § 1681n(a) (emphasis added); *see also* 15 U.S.C. § 1681o(a) (same standard, for negligent violations). One "requirement imposed" by the FCRA – the one Plaintiffs allege was violated here – is that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information **concerning the individual about whom the report relates**." 15 U.S.C. § 1681e(b) (emphasis added).

Here, the credit report at issue was solely about Kropp; Simone does not allege that she appears anywhere in the credit report, or that any of the accounts described in the report were in any way her accounts (either solely or jointly). In statutory terms, the

4

relevant "requirement imposed" by the FCRA was to "assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b); *see also* 15 U.S.C. §§ 1681n, 1681o. Plaintiffs allege that Defendants breached this requirement by providing inaccurate information in Kropp's criminal background report. ECF No. 1 ¶ 86. There is no dispute that the person "about whom the report relate[d]," *see* 15 U.S.C. § 1681e(b), was Kropp, not Simone. When applied to the provision defining the scope of the Act's private right of action, that means the pertinent statutory obligation was "with respect to" Kropp, not Simone; when § 1681o(a) renders Defendants liable to "that consumer" (*i.e.*, the consumer "with respect to" whom Defendants are alleged to violated a "requirement imposed" under the FCRA), Congress was authorizing Kropp to sue, not Simone. Simone clearly has alleged that she suffered a harm resulting from Defendants' alleged violation of the FCRA, including termination of her lease. But that does not necessarily mean that Congress has authorized her (as opposed to Kropp) to sue based on the alleged error in Kropp's credit report. Under the plain language of the FCRA, Simone's lawsuit is not authorized. *See Ward v. Trans Union Corp.*, 2006 WL 8438484, at *7 (E.D.N.C. Feb. 16, 2006) ("Joseph does not have standing to assert this claim with respect to Patricia's consumer report.").[2]

---

[2] The question of whether a statute confers a statutory cause of action on a particular person has sometimes been referred to as "statutory standing." The Supreme Court has suggested moving away from that terminology, for fear of confusing the concept with Article III standing or suggesting that a lack of a statutory cause of action is jurisdictional. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014); *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91, 103 n.5 (4th Cir. 2025).

In arguing that the FCRA does authorize Simone to sue, Plaintiffs cite to several cases in which courts have held that someone other than the person whose name was on the consumer report could pursue an FCRA claim. ECF No. 19-1 at 8–12.

In many of those cases, however, the credit reports were at least partially about the plaintiff at issue, and thus the plaintiff whose right to assert a claim was being challenged was a "consumer" to whom the defendants owed a duty under the FCRA that was alleged to have been breached. For example, in *Soghomonian v. United States*, 278 F. Supp. 2d 1151, 1167 (E.D. Cal. 2003), *vacated by stipulation of the parties*, 2005 WL 1972594 (E.D. Cal. June 20, 2005), the credit report, "although ostensibly pertaining to Raffi only, actually contain[ed] considerable information pertaining to Deborah as well." That means Deborah (Raffi's spouse)—unlike Simone here—was "a 'consumer' with respect to whom Trans Union" was alleged to have "violated 'a[] provision of [the FCRA].'" *Id.* Other cases Plaintiffs cite are distinguishable for the same reason: *Conley v. TRW Credit Data,* 381 F. Supp. 473, 474 (N.D. Ill. 1974) (credit report stated that both plaintiffs had "left their Philadelphia apartment owing the owner approximately $1,000"); *Roybal v. Equifax*, Case No. 2:05-cv-1207, 2008 WL 4532447, at *5–6 (E.D. Cal. 2008) (husband's inaccurate credit report listed at least one joint account with the wife); *Williams v. Equifax Credit Info. Servs.*, 892 F. Supp. 951, 953 (E.D. Mich. 1995) (additional plaintiff "was a co-owner of the property the errant tax liens [which were listed on the credit reports at issue] affected").[3]

---

[3] As for *Haque v. CompUSA, Inc.*, Case No. 02-10345-RWZ, 2003 WL 117986, at *2 (D. Mass. Jan. 13, 2003), the credit report described a "fraud ring." Although the report did not describe the FCRA plaintiff by name, she had been charged with fraud together with the person who was described in the report, and thus she was an "'individual about

6

To be sure, some other courts have interpreted the FCRA as authorizing any person to sue who was harmed, directly or derivatively, by an alleged FCRA violation. *See, e.g.*, *Barron v. Trans Union Corp.*, 82 F. Supp. 2d 1288, 1296 (M.D. Ala. 2000) ("Because Plaintiffs were denied joint credit, the court finds that Mrs. Barron was affected by Mr. Barron's consumer report and, thus, the consumer report relates to her."); *Miller v. Wells Fargo & Co.,* Case No. 3:05-CV-42-S, 2008 WL 793676, at *7 (W.D. Ky. Mar. 24, 2008) (permitting wife's claim to proceed because her "creditworthiness was damaged as a result of the bankruptcy notation on Mr. Miller's credit report"); *Bradshaw v. Collection Bureau of Hudson Valley*, Case No. 2:09-cv-1149, 2010 WL 11565277, at *4 (N.D. Ala. 2010) (following *Barron*); *Henderson v. Chase Home Finance, LLC*, Case No. 09-cv-2461-PHX-JAT, 2012 WL 4006686, at *6 (D. Ariz. Sept. 12, 2012) (permitting claim to proceed by plaintiff who was "denied access to $10,000 in credit based on the false reporting of [her husband's] credit"). As discussed above, such a person may have suffered an injury in fact attributable to a defendant's statutory violation, and that may suffice for Article III standing. But Congress did not authorize every person with Article III standing to sue for FCRA violations; it only authorized damages suits by persons "with respect to [whom]" the FCRA imposes a substantive "requirement." 15 U.S.C. §§ 1681n(a), 1681o(a). Here, there is no allegation that Kropp's consumer report contained any information about Simone, or that Defendants otherwise violated any duty to Simone imposed by the FCRA.

---

whom the report relates.'" *Id*. (quoting 15 U.S.C. § 1681e(b)). Here, Plaintiffs do not allege that anything in Kropp's report related to or was assumed to have related to Simone.

Finally, the Court may assess attorneys' fees against a party "where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Strag v. Bd. of Tr., Craven Comm. Coll.*, 55 F.3d 943, 955 (4th Cir. 1995) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)); *Letren v. Trans Union, LLC*, Case No. 15-cv-3361, 2017 WL 4098743, at *6 (D. Md. Sept. 15, 2017). The FCRA itself also entitles a party to attorneys' fees but only if an "unsuccessful pleading, motion, or other paper" was filed "in bad faith or for purposes of harassment." 15 U.S.C. § 1681n(c); 15 U.S.C. § 1681o(b). "A party has acted in bad faith if he or she knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Letren*, 2017 WL 4098743, at *6 (quoting *Nasser v. WhitePages, Inc.*, Case No. 4:12-cv-00097, 2014 WL 1323170, at *6 (W.D. Va. Apr. 1, 2014) (internal quotations omitted). The Court may also assess attorneys' fees should any attorney "so multipl[y] the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Although the Court dismisses the claims by Simone under Rule 12(b)(6), the Court does not find that Plaintiffs pursued the claims in bad faith or for the purpose of harassment. Accordingly, the Court will deny RentGrow's motion for attorneys' fees related to Simone's claims.

**IV.   Conclusion**

For the foregoing reasons, Defendants' motions to dismiss (ECF Nos. 19, 20) will be granted in part and denied in part. The Court will grant Defendants' motions to dismiss the claims by Simone. The Court will deny RentGrow's motion for attorneys' fees. A separate order follows.

Date: November 19, 2025                         _____*/s/*_____
                                                                              Adam B. Abelson
                                                                              United States District Judge